Joseph M.R. Covey (7492) (*jcovey@parrbrown.com*)
Thomas M. Melton (4999) (*tmelton@parrbrown.com*)
Jeffery Balls (12437)  (*jballs@parrbrown.com*)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Jonathan O. Hafen, Receiver*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>vs.<br><br>AG TSUNAMI, LLC, ZACHARY FINLEY, THOMAS GRAY, ROBYN GRAY, KAPIL KARKRA, SILVER SHOES, LLC, PLETHORA, LLC, AND NOREEN DEFA,<br><br>Defendants. | **COMPLAINT**<br>(Ancillary Suit-General Order 19-001)<br><br><br>Case No.<br><br>Honorable Tena Campbell |

Jonathan O. Hafen (the "Receiver"), in his capacity as Court-appointed Receiver over the assets of Rust Rare Coin, Inc. ("RRC"), Gaylen Dean Rust, R. Legacy Racing inc., R Legacy Entertainment LLC, and R Legacy Investments, LLC (Collectively, the "Receivership Defendants'), hereby alleges, avers, and complains of Defendants AG Tsunami, LLC, Zachary Finley, Thomas Gray, Robyn Gray, Kapil Karkra, Silver Shoes, LLC, Plethora, LLC, and Noreen Defa (collectively, the "Defendants") as follows:

1

## INTRODUCTION

1. The Receivership Defendants operated a Ponzi scheme since at least 2008 by soliciting funds from investors in violation of federal commodities and state securities laws and using the funds obtained for their own use or to pay bogus returns to earlier investors.

2. During the Ponzi scheme, the Receivership Defendants made numerous material misrepresentations and omissions, misappropriated investor, and other funds, and committed fraud as a commodity pool operator.

3. On November 3, 2018, the Commodities Futures Trading Commission ("CFTC) and the Utah Division of Securities ("DOS") filed a Complaint against the Receivership Defendants in the United States District Court for the District of Utah, Civil No. 2:18-cv-00892-TC-DBP (the "CFTC Action").[1]

4. THE CFTC and DOS allege that the Receivership Defendants fraudulently solicited over $200 million from investors who they tricked into believing that the Receivership Defendants were purchasing silver at lower prices and selling it for a profit (the "Silver Pool").

5. Receivership Defendants also told purchasers that Receivership Defendants would store silver on their behalf in physical form.

6. There was, in fact, no Silver Pool and only a minimal inventory of silver. Instead, the Receivership Defendants operated a massive Ponzi scheme whereby they used money from new investors and purchasers to pay fictitious returns or other payments to earlier investors and purchasers.

---

[1] The CFTC and DOS filed an amended complaint in the CFTC Action on December 6, 2018.

7. On November 15, 2018, the Receiver was appointed by this Court to identify, collect, and preserve the assets of the Receivership Estate for the benefit of the estate's creditors, including hundreds of defrauded investors and others.

8. The instant action is brought by the Receiver as part of his continuing duty to: (1) recapture and return investor and other funds that were sent or paid to the Receivership Defendants and then diverted during their Ponzi scheme, and (2) avoid fraudulent transfers of property belonging to the Receivership Defendants.

## PARTIES, JURISDICTION, AND VENUE

9. Jonathan O. Hafen was appointed November 15, 2018, as receiver for the assets of the Receivership Defendants in the CFTC Action.

10. AG Tsunami, LLC is a Utah limited liability company and a recipient of funds from the Receivership Defendants.

11. Noreen Defa is a Missouri resident and a recipient of funds from the Receivership Defendants.

12. Zachary Finley is a Utah resident and a recipient of funds from the Receivership Defendants.

13. Thomas and Robyn Gray are Utah residents and recipients of funds from the Receivership .

14. Kapil Karkra is a Utah resident of and a recipient of funds from the Receivership Defendants.

15. Silver Shoes, LLC was a Utah limited liability company and a recipient of funds from the Receivership Defendants.

16.     Plethora, LLC was a Utah limited liability company and a recipient of funds from the Receivership Defendants.

17.     The Court has jurisdiction over the subject matter of this action because it is ancillary to the CFTC Action and the appointment of the Receiver by this Court.

18.     Defendants have sufficient minimum contacts with Utah that personal jurisdiction is appropriate in this Court.  Personal jurisdiction is also proper pursuant to 28 U.S.C. §§ 754, 1692.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 754.

## THE RECEIVER, STANDING, AND STATUS OF THE CFTC ACTION

20.     On November 15, 2018, in the CFTC Action, this Court entered an Order Granting Plaintiffs' Ex Parte Motion for Statutory Restraining Order, Appointment of Receivers, and Other Equitable Relief, appointing Mr. Hafen as Temporary Receiver.

21.     On November 17, 2018, this Court entered an Order Appointing Receiver and Staying Litigation (the "Appointment Order"), appointing Mr. Hafen as permanent Receiver.

22.     Pursuant to the Appointment Order, the Receiver was to take control of all property of the Receivership Estate, wherever located.

23.     The Receiver was further authorized to initiate suit to recover any and all property of the Receiver Estate in the possession of third parties.

24.     Since the entry of the Appointment Order, preliminary injunctions have entered as to all Receivership Defendants.

## THE FRAUDULENT PONZI SCHEME

25. For over thirty years, Gaylen Dean Rust ("Rust") owned and operated RRC, a specialty coin shop in Salt Lake City, Utah, dealing in rare coins, precious metals, and other memorabilia.

26. From at least 2008, Rust also operated a massive Ponzi scheme through which he and others defrauded over 430 individuals out of over $200 million.

27. The Receivership Defendants promoted the Silver Pool as an exclusive investment opportunity through which individual investors both contributed money and precious metals and recruited their friends and family to invest as word spread about the investment returns the Receivership Defendants were purportedly generating.

28. The Receivership Defendants told investors, purchasers, and prospective investors that they were using the money contributed to the Silver Pool to purchase and store physical silver for investment.

29. The Receivership Defendants claimed to use funds contributed to the Silver Pool to purchase physical silver which was then to be stored at Brinks' storage facilities in Salt Lake City, Utah and Los Angeles, California.

30. The Receivership Defendants claimed they generated profits for investors by selling physical silver held in the Silver Pool when markets began to decline and, after such a decline, they used the profits from the sale to purchase a larger quantity of silver at a lower price.

31. Through this process, the Receivership Defendants claimed they were able to consistently increase the number of silver ounces held in the Silver Pool and, consequently, increase the value of each investor's share of the Silver Pool.

32. The Receivership Defendants further represented that they were able to consistently sell silver at higher prices and purchase silver back at low prices because they had advance knowledge of when market prices would decline. Specifically, Rust claimed that he received information from an analyst at a large global bank when the bank and other large market participants planned to sell large quantities of physical silver, thereby driving down prices.

33. The Receivership Defendants told investors they could generate high rates of return for the Silver Pool, often representing that they were able to generate consistent returns of twenty to twenty-five percent. The Receivership Defendants told some investors that they had consistently generated returns as high as forty percent between 2013 and 2018.

34. The Receivership Defendants represented that they had approximately $80 million in physical silver stored at Brinks' facilities in Utah and California.

35. The Receivership Defendants' representations were false. The Receivership Defendants did not store significant quantities of silver at any Brinks facility.

36. Instead, the Receivership Defendants misappropriated funds invested in the Silver Pool and other physical silver that they sold in the manner of a Ponzi scheme. Specifically, after receiving a new deposit into the Silver Pool or funds from a silver purchaser, Receivership Defendants made payments to other investors from the same bank account without ever transferring funds to or from a trading account or otherwise purchasing silver or other precious metals.

37. Additionally, the Receivership Defendants transferred money contributed by Silver Pool investors to other entities controlled by Rust, including but not limited to R Legacy Entertainment, R Legacy Racing, and R Legacy Investments.

38. None of these other entities owned any trading or similar accounts used to buy or sell silver or other precious metals and neither had a legitimate right to funds sourced from Silver Pool investors.

39. Rust has now pled guilty and been sentenced for operating a Ponzi scheme in conjunction with the Silver Pool.

## DISBURSEMENTS TO DEFENDANTS FROM THE SILVER POOL

40. Receivership Defendants transferred money and assets to AG Tsunami, LLC which did not fund an investment in the Silver Pool.

41. Receivership Defendants transferred money and assets to AG Tsunami, LLC with the actual intent to hinder, delay, or defraud creditors.

42. Receivership Defendants transferred money and assets to Noreen Defa who did not fund an investment in the Silver Pool.

43. Receivership Defendants transferred money to Noreen Defa with the actual intent to hinder, delay, or defraud creditors.

44. Receivership Defendants transferred money and assets to Zachary Finley who did not fund an investment in the Silver Pool.

45. Receivership Defendants transferred money and assets to Zachary Finley with the actual intent to hinder, delay, or defraud creditors.

46. Thomas and Robyn Gray's funds for silver purchases were commingled with the purchases of other individuals and entities.

47. Receivership Defendants transferred money to Thomas and Robyn Gray with the actual intent to hinder, delay, or defraud creditors.

48. Receivership Defendants transferred money and assets to Thomas and Robyn Gray that exceed the amount of their investment.

49. Receivership Defendants transferred money and assets to Kapil Karkra who did not fund an investment in the Silver Pool.

50. Receivership Defendants transferred money to Kapil Karkra with the actual intent to hinder, delay, or defraud creditors.

51. Silver Shoes, LLC's funds for silver purchases were commingled with the purchases of other individuals and entities.

52. Receivership Defendants transferred money to Silver Shoes, LLC with the actual intent to hinder, delay, or defraud creditors.

53. Receivership Defendants transferred money and assets to Silver Shoes, LLC, that exceed the amount of its investment.

54. Plethora, LLC's funds for silver purchases were commingled with the purchases of other individuals and entities.

55. Receivership Defendants transferred money to Plethora, LLC with the actual intent to hinder, delay, or defraud creditors.

56. Receivership Defendants transferred money and assets to Plethora, LLC, that exceeded the amount of its investment.

## FIRST CLAIM FOR RELIEF
### (Voidable or Fraudulent Transactions)

57. Plaintiff hereby incorporates paragraphs 1 through 55 of the preceding Complaint by reference.

58. Receivership Defendants operated the Silver Pool as a Ponzi scheme.

59. Defendants received payments totaling hundreds of thousands of dollars from Receivership Defendants.

60. Because Receivership Defendants operated the Silver Pool as a Ponzi scheme, as a matter of law, the transfers to Defendants were made with the intent to hinder, delay, or defraud creditors.

61. In addition, the transfers to the Defendants were made at a time when Receivership Defendants were insolvent, and Receivership Defendants did not receive reasonably equivalent value in exchange for the transfers.

62. At a minimum, Defendants must return the amount they received from the Receivership Defendants less the amount they invested.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

63. Plaintiff hereby incorporates paragraphs 1 through 55 of the preceding Complaint by reference.

64. Receivership Defendants conferred a benefit upon the Defendants when the Defendants received payments from the Silver Pool.

65. Defendants knew and understood the benefit they received.

66. It would be unjust, under the circumstances, to allow the Defendants to retain payments from the Silver Pool more than their individual contributions.

**WHEREFORE**, Plaintiff prays as follows:

A. That the Plaintiff be awarded damages against Defendants in an amount to be determined at trial, plus prejudgment and post judgment interest, and costs; and

B. For such other relief as the Court may allow.

DATED this 23rd day of August 2024.

                PARR BROWN GEE & LOVELESS, P.C.

                By: */s/ Thomas M. Melton*
                    Joseph M.R. Covey
                    Jeffery Balls
                    Thomas M. Melton
                    *Attorneys for Jonathan O. Hafen, Receiver*